IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PETER MARGIOTTA,<br><br>Defendant. | CR 17-143-BLG-SPW-2<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT 2 AND DEFENDANT'S MOTION TO STRIKE |

On August 26, 2019, Defendant Peter Margiotta filed a motion to dismiss Count 2 from the indictment for failure to state an offense (Doc. 90), along with a motion to strike surplusage from the indictment (Doc. 92) based on his legal theories in his motion to dismiss. Margiotta argues the USA cannot bring a criminal charge under the Clean Air Act's (CAA) general duty clause, 42 U.S.C. § 7412(r)(1). (Doc. 90 at 7.) He also argues the general duty clause and its corresponding enforcement provision, § 7413(c)(1), are unconstitutionally vague. (Doc. 90 at 9.) On September 9, 2019, the USA filed its response to both motions. (Doc. 99.) For the following reasons, the Court denies Margiotta's motions.

1

## I. Background

The indictment the USA filed alleges Margiotta was the president and director of Custom Carbon Processing, Inc. ("Custom Carbon"). (Doc. 1 at 2.) In 2012, under Margiotta's direction, Custom Carbon began construction of the Michels Disposal Well and Oil Reclamation Facility ("Michels Facility") near Wibaux, Montana. *Id.* The Michels Facility was designed to process unrefined, non-saleable *slop oil* into saleable pipeline standard crude oil and to dispose of *saltwater* or *production water* generated during oil and gas production. *Id.* at 3. The indictment alleges that at the Michels Facility, Custom Carbon, under Margiotta's direction, housed several pieces of equipment open to the atmosphere that allowed "hazardous and flammable hydrocarbon vapors to vent out of the processing equipment and outside the building." *Id.* The Michels Facility lacked industry-standard "explosion-proof wiring, lighting, and equipment suitable for a facility that is subject to releases of flammable hydrocarbon vapors." *Id.* at 4.

The indictment further alleges that in July 2012, Margiotta and Mark Hurst, Custom Carbon's project manager, opened the Michels Facility for oil processing operations before the implementation of appropriate electrical wiring, ventilation, and other safety measures. *Id.* Hurst sent Margiotta an email at that time stating, "The control panels must be moved asap with the explosion proof wiring. We also

run the risk of killing someone, not only our operators but also customers." *Id.* at 4–5. By October, a foreman for Custom Carbon warned Margiotta and Hurst a natural gas condensate the facility began accepting shipments of—intended to help thin and process the slop oil—was ineffective in the operations and was creating "a dangerous situation due to its highly volatile and flammable nature." *Id.* at 5. The foreman allegedly attempted to refuse shipments of the natural gas condensate, but Hurst directed the foreman to accept them. *Id.* In December 2012, vapors from a shipment of the natural gas condensate reached an ignition source and caused an explosion, injuring three employees. *Id.* at 5–6.

The USA filed charges against Custom Carbon, Margiotta, and Hurst, alleging: 1) conspiracy to violate the CAA, 42 U.S.C. §§ 7413(c)(1), 7413(c)(5), and 7412(r)(1); 2) knowingly violating the CAA's general duty clause, §§ 7413(c)(1) and 7412(r)(1); and 3) knowingly releasing into the ambient air a hazardous air pollutant listed under § 7412 with the knowledge that it placed another in imminent danger of death or serious bodily injury, § 7413(c)(5). (Doc. 1 at 7–11.)

## II. Standards of Review

Margiotta contends Count 2 of the indictment fails to state an offense and the CAA's general duty clause and § 7413(c) are unconstitutionally vague. Therefore, he urges the Court to dismiss Count 2.

The indictment must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1). The indictment must also "set forth each element of the crime that it charges." *Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998). The test is "not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) (internal quotations omitted). The indictment "must be read in its entirety and construed with common sense and practicality." *Id.* (internal quotations omitted). "On a motion to dismiss an indictment for failure to state an offense, the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).

"[W]hether or not a statute is unconstitutionally vague must be assessed in the context of the particular conduct to which it is being applied." *Donovan v. Royal Logging Co.*, 645 F.2d 822, 831 (9th Cir. 1981) (quoting *United States v. Dacus*, 634 F.2d 441, 444 (9th Cir. 1980)). On its face, a statute is unconstitutional if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009) (quoting *United States*

*v. Williams*, 553 U.S. 285 (2008)). A statute is vague as applied "if it failed to put a defendant on notice that his conduct was criminal." *Id.*

**III. Discussion**

Section 7413(c)(1) imposes criminal penalties for knowingly violating certain provisions of the CAA, including § 7412: "Any person who knowingly violates . . . section 7412 of this title . . . shall, upon conviction, be punished by a fine pursuant to Title 18 or by imprisonment for not to exceed 5 years, or both." Section 7412(r)(1), commonly referred to as the CAA's *general duty clause*, states the objective of the regulatory scheme is to prevent and minimize the consequences of accidental releases of extremely hazardous substances. It therefore imposes the following general duty:

> The owners and operators of stationary sources producing, processing, handling or storing such substances have a general duty in the same manner and to the same extent as section 654 of title 29 to identify hazards which may result from such releases using appropriate hazard assessment techniques, to design and maintain a safe facility taking such steps as are necessary to prevent releases, and to minimize the consequences of accidental releases which do occur.

Section 7412(r)(1).

29 U.S.C. § 654, part of the Occupational Safety and Health Act (OSH Act) to which 42 U.S.C. § 7412(r)(1) refers, imposes the general duty on an employer to "furnish to each of his employees employment and a place of employment which are

free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." 29 U.S.C. § 654(a)(1). The statute also imposes a specific duty on an employer that they "shall comply with occupational safety and health standards promulgated under this chapter." Section 654(a)(2).

The OSH Act imposes only civil penalties for violations of its general duty clause. Section 666(a)–(d). The OSH Act imposes criminal penalties only for willful violations of specific regulations causing the death of an employee. Section 666(e); *St. Joe Minerals Corp. v. Occupational Safety and Health Rev. Commn.*, 647 F.2d 840, 843 n. 2 (8th Cir. 1981).

A violation of the CAA's general duty clause, however, is a different matter. The USA argues 42 U.S.C. § 7413(c)(1), which acts as a catch-all provision for violations of § 7412 not specifically listed elsewhere,[1] provides an avenue to prosecute violations of the CAA's general duty clause. Margiotta disagrees. He asserts the plain language of the general duty clause, § 7412(r)(1), incorporates the general duty of the OSH Act, 29 U.S.C. § 654(a)(1), and therefore provides only

---

[1] Under the CAA, knowing or negligent releases of hazardous air pollutants into the ambient air that place another person in imminent danger of death or serious bodily injury may result in criminal penalties under § 7413(c)(4)–(5). Subsection (2) imposes criminal penalties for knowing deception and falsehoods regarding the CAA's reporting requirements. Subsection (3) criminalizes the knowing failure to pay most fees owed the USA under the CAA. Subsection (1) acts as a catch-all provision and criminalizes several other types of violations, including a violation under § 7412.

civil penalties for violations.

    1. 42 U.S.C. § 7413(c)(1) permits the imposition of criminal penalties for violations of the CAA's general duty clause, § 7412(r)(1).

Margiotta is incorrect. The plain statutory language of § 7413(c)(1) clearly provides criminal penalties for knowing violations of § 7412, which includes the CAA's general duty clause. The CAA's general duty clause does not "incorporate[]" the OSH Act's general duty—it references the OSH Act's general duty clause only to provide a legal standard for applying the CAA's general duty clause.

In a case of statutory interpretation, the Court begins "with the understanding that Congress says in a statute what it means and means in a statute what it says there . . . ." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (internal citations and quotations omitted). "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Id.* (internal citations and quotations omitted). Even still,

> It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989). A court must therefore interpret the statute "as a symmetrical and coherent regulatory scheme," *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995), and "fit, if possible, all parts into an harmonious whole," *FTC v. Mandel Brothers, Inc.*, 359 U.S. 385, 389 (1959).

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000).

Margiotta focuses on language from the CAA's general duty clause detailing how owners and operators of stationary sources "have a general duty in the same manner and to the same extent as section 654 of title 29 . . . ." He argues that via the foregoing language, the CAA's general duty clause "incorporates" the OSH Act's general duty clause. Therefore, he concludes, limits on criminal penalties for violations of the OSH Act's general duty clause must also limit the CAA's general duty clause.

But the CAA's general duty clause does not incorporate the OSH Act's general duty clause or independently impose the OSH Act's general duty on "owners and operators of stationary sources"—those to whom the CAA's general duty clause applies. Section 7412(r)(1). Instead, the statute describes the CAA's general duty as "*a general duty*, in the same manner and to the same extent" as the OSH Act's general duty. Section 7412(r)(1) (emphasis added). That language contemplates two distinct general duties, each with different requirements, yet sharing the same standard of application and the same scope or breadth. In other words, both general duties share the same properties and characteristics: the CAA's general duty clause, like the OSH Act's, is therefore independently enforceable, and it shares the

elements of a general duty offense.

Section 7412(r) states its purpose is "to prevent the accidental release and to minimize the consequences of any such release" of hazardous substances. The statute aims to prevent this environmental danger by imposing a general statutory duty "to identify hazards which may result from such releases using appropriate hazard assessment techniques, to design and maintain a safe facility taking such steps as are necessary to prevent releases, and to minimize the consequences of accidental releases which do occur." § 7412(r)(1). The statute also establishes more specific accident-prevention and record-keeping requirements under § 7412(r)(7), including the development of a *risk management plan* to document measures taken to prevent accidental releases of hazardous substances. The OSH Act, however, under 29 U.S.C. § 654(a)(1), imposes a general duty on employers to "furnish to each of [their] employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to [their] employees," in addition to a more specific requirement, § 654(a)(2), to comply with OSH Act standards promulgated under the chapter. The general duties under each statute are distinct and carry their own requirements, even though they apply in the same manner and to the same extent. Had Congress intended these two general duties to be the same, it would have said so.

9

two general duties to be the same, it would have said so.

This is the most harmonious reading of the two clauses. Margiotta imagines a scenario where, if the CAA's general duty clause did incorporate the OSH Act's, 42 U.S.C. § 7413(c)(1) could impose sanctions for violations of the OSH Act's general duty. The Court agrees such a result would be absurd—it would make little sense to allow a provision buried in statutes regulating hazardous air pollutants to impose criminal sanctions for employers breaching the OSH Act's general duty clause when the statute lacks express language indicating as much. Instead, the most logical reading is that the CAA's general duty shares the same application standard and scope or breadth with the OSH Act's—i.e., they exist "in the same manner and to the same extent."

Finally, while the Court resolves the issue on the plain language of the statute, it is worth noting the legislative history of the CAA's general duty clause. In particular, the legislative history makes clear the clause references the OSH Act's general duty clause so that the CAA's general duty clause may be applied using a "similar standard." S. Rep. No. 101-228 (1989), *reprinted in* 1990 U.S.C.C.A.N. 3385, 3594. The Senate Report on the addition of § 7412(r) to the CAA discussed the following:

> The Occupational Safety and Health Administration cites this clause

for enforcement purposes when a hazard is found in the workplace for which there is no specific OSHA regulation or standard, and when the employer is aware that the hazard exists.

The standard for applying the general duty clause has been described (for the OSHA statute) in the case Secretary of Labor v. Duriron Company, Inc., 11 OSHC 1405[2] upheld by the courts on appeal. This decision is cited to indicate that a similar standard is an appropriate application of the general duty to operate a facility free from accidents established by the proposed section 129(a).

*Id.*

In summary, the CAA's general duty clause does not derive its enforceability from the OSH Act's, even though § 7412(r) imposes the former "in the same manner and to the same extent" as the latter. The OSH Act's general duty clause therefore does not limit violations of the CAA's general duty clause to civil penalties alone. The CAA's general duty clause and the OSH Act's general duty clause are distinct general duties imposed by separate statutory schemes but sharing the same

---

[2] The case the Senate referenced here is *Sec'y of Labor v. Duriron Co., Inc.*, 1983 WL 23869 (1983 OSHRC), *aff'd Duriron Co. v. Sec'y of Labor: U.S. Occupational Safety & Health Review Comm'n*, 750 F.2d 28 (6th Cir. 1984). There the OSH Review Commission held that to establish a violation of the OSH Act's general duty clause, OSHA needed to establish:
> (1) the employer failed to render its workplace free of a hazard, (2) the hazard was recognized either by the cited employer or generally within the employer's industry, (3) the hazard was causing or was likely to cause death or serious physical harm, and (4) there was a feasible means by which the employer could have eliminated or materially reduced the hazard.

The Sixth Circuit affirmed this decision on appeal but rephrased the proof needed to establish a violation. It held OSHA needed to prove: "(1) the employer failed to render its workplace free of a hazard which was; (2) recognized and (3) caused or was likely to have caused death or serious physical harm." *Duriron Co. v. Sec'y of Labor: U.S. Occupational Safety & Health Review Comm'n*, 750 F.2d 28 (6th Cir. 1984).

application standard and the same scope or breadth. They also share similar characteristics: they share similar elements, and each is independently enforceable. Therefore, where § 7413(c)(1) provides criminal sanctions for knowing violations of § 7412, the Court holds the USA may pursue criminal charges under the statute for a knowing violation of the CAA's general duty clause, § 7412(r)(1).

Turning now to the indictment, the Court finds it tracks the plain language of §§ 7412(r)(1) and 7413(c)(1). It sets forth the elements of the offense charged, and accepting the indictment's factual allegations as true, the Court finds they meet each element. The Court concludes the indictment charges Margiotta with a cognizable offense, namely a violation of the CAA's general duty clause under §§ 7412(r)(1) and 7413(c)(1).

> 2. The CAA's general duty clause and § 7413(c)(1) are not unconstitutionally vague or vague as applied.

Margiotta next argues the CAA's general duty clause and § 7413(c)(1) are unconstitutionally vague as applied because it is unclear whether § 7413(c)(1) imposes criminal sanctions for violations of both the general duty clause and the specific duty clause of the OSH Act. Margiotta contends the way the CAA's general duty clause, the OSH Act's general duty clause, and § 7413(c)(1) integrate with one another fails to put a reasonable person on notice of what conduct is and is

not subject to criminal penalties.

Primarily, Margiotta's argument presumes the OSH Act's general duty clause limits the CAA's general duty clause and that violations of the OSH Act's general duty clause may be prosecuted through § 7413(c)(1). That premise is incorrect, as the Court held above. The CAA's general duty clause simply shares the same standard of application and enforcement—"in the same manner and to the same extent"—as the OSH Act's general duty clause.

Several courts have upheld the constitutionality of the OSH Act's general duty clause in the face of unconstitutional vagueness challenges. *See, e.g., Donovan*, 645 F.2d 822 (recognizing the OSH Act's general duty clause provided an ordinary person with fair notice that failing to provide seatbelts in earthmoving machinery violated the statute where a rollover would likely result in death or serious bodily injury); *Bethlehem Steel Corp. v. OSHRC*, 607 F.2d 871, 873 (3d Cir. 1979) (holding the OSH Act's general duty clause provided fair notice that operating a crane in high winds was a "recognized hazard" an employer must avoid); *Ga. Elec. Co. v. Marshall*, 595 F.2d 309, 321 (5th Cir. 1979) (concluding an employer had fair notice under the OSH Act's general duty clause that operating a defective crane near live power lines would violate the statute). The Court applies the principles from those cases and looks to them for guidance when evaluating the CAA's analogous general

duty clause. For example, under a general duty clause, industry standards help inform whether there is fair notice that certain conduct is prohibited. *See United States v. Iverson*, 162 F.3d 1015, 1021 (9th Cir. 1998) ("where, as here, a criminal statute regulates economic activity, it generally 'is subject to a less strict vagueness test, because its subject matter is more often narrow and because businesses can be expected to consult relevant legislation in advance of action.'") (quoting *United States v. Doremus*, 888 F.2d 630, 634 (9th Cir. 1989)); *Donovan*, 645 F.2d at 831 (any concerns regarding fair notice under a general duty clause "dissipate when [courts] read the clause as applying when a reasonably prudent employer in the industry would have known that [a] proposed method of abatement was required under the job conditions . . . .").

The USA aptly points to *Ensign-Bickford Co. v. Occupational Safety and Health Comm'n*, 717 F.2d 1419 (D.C. Cir. 1983), which represents yet another rejection of an unconstitutional vagueness challenge to the OSH Act's general duty clause. In *Ensign-Bickford Co.*, an employer knew of the explosive properties of a chemical mixture used to produce anti-tank rockets yet failed to follow industry standards for collection and disposal of the excess mixture after production. *Id.* at 1422. The employer improperly assembled collection chambers used to collect the mixture and delegated the chambers' design and implementation "to a worker who

14

had no expertise in assembling them, who was unaware of the many devices available for the safe collection of explosives and pyrotechnics, and who, as a result, built an improvised collection chamber which failed to function properly." *Id.* Disaster ensued when an explosion injured six employees. *Id.* at 1421.

The D.C. Circuit Court held the OSH Act's general duty clause provided the employer with fair notice that his conduct violated the statute if he did not eliminate such "preventable hazards." *Id.* The statute was neither vague on its face nor as applied, and the court concluded the employer had willfully violated the general duty clause. *Id.* at 1421–22.

Just as the OSH Act's general duty clause is not unconstitutionally vague on its face, neither is the CAA's analogous general duty clause. Owners and operators have the general duty "to identify hazards which may result from [accidental] releases using appropriate hazard assessment techniques, to design and maintain a safe facility taking such steps as are necessary to prevent releases, and to minimize the consequences of accidental releases which do occur." § 7412(r)(1). The indictment alleges Margiotta opened an oil processing facility before implementing "appropriate electrical wiring, ventilation, and other safety measures." Margiotta's employees warned him that these hazards were creating a dangerous situation and "[ran] the risk of killing someone." (Doc. 1 at 5.) The indictment alleges these

severe deficiencies allowed an extremely hazardous substance to be released that ultimately caused an explosion and injured three employees. (Doc. 1 at 5–6, 10.) Certainly, the CAA's general duty clause provided Margiotta with fair notice that his alleged conduct was forbidden. The statute is neither unconstitutionally vague on its face nor as applied.

## IV. Conclusion

The CAA's general duty clause is a distinct, independently enforceable general duty from the OSH Act's general duty clause, even though the CAA's general duty clause applies "in the same manner and to the same extent" as the OSH Act's. Section 7413(c)(1) imposes criminal punishment for violations of the CAA's general duty clause. Count 2 of the indictment correctly lists the elements of the offense and alleges facts, which taken as true, establish Margiotta violated the CAA's general duty clause under §§ 7412(r)(1) and 7413(c)(1). Count 2 does not fail to state an offense. Furthermore, the CAA's general duty clause is neither vague on its face nor as applied to Margiotta. The statute gave him fair notice that it proscribed the conduct he allegedly engaged in.

Lastly, Margiotta bases his motion to strike portions of the indictment (Doc. 92) on the Court accepting his argument here and granting his motion to dismiss Count 2. Because Margiotta's underlying argument for his motion to dismiss Count

2 is incorrect, the Court holds the allegations of fact and conclusions of law pertaining to a violation of the CAA's general duty clause, whether alleged as the substantive offense in Count 2 or as overt acts in furtherance of a conspiracy to violate the CAA's general duty clause in Count 1, are not surplusage in the indictment. Accordingly,

**IT IS HEREBY ORDERED:**

1. Margiotta's Motion to Dismiss Count 2 for Failure to State an Offense (Doc. 90) is **DENIED**.

2. Margiotta's Motion to Strike Surplusage from the Indictment (Doc. 92) is **DENIED**.

The Clerk of Court shall notify counsel of this Order.

DATED the 12th day of September, 2019.

*Susan P. Watters*
SUSAN P. WATTERS
UNITED STATES DISTRICT JUDGE