**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 17-143-BLG-SPW** |
| **Plaintiff,** | |
| **vs.** | **ORDER AND FINDINGS ON RESTITUTION** |
| **PETER MARGIOTTA,** | |
| **Defendant.** | |

A jury convicted the Defendant, Peter Margiotta, for violations of the general duty and knowing endangerment clauses of the Clean Air Act, along with conspiracy to violate both, after an explosion at a facility Margiotta owned and operated injured two of his employees, Joshua Garrison and Aaron Osborne. (Doc. 121.) The Court conducted a sentencing hearing on July 10, 2020, where it informed the parties it would take the issue of restitution under advisement. For the following reasons, the Court orders restitution for the negotiated settlement amounts for the victims' lost income attributable to Custom Carbon Processing, Inc ("CCP"). The Court does not order restitution for the attorneys' fees and costs Garrison and Osborne incurred in a related civil lawsuit.

1

## I.     Background

Garrison and Osborne retained counsel to pursue civil litigation to recover damages for their injuries from the explosion.  (Doc. 200 at 20.)  The two filed a civil lawsuit against five defendants, including Margiotta's company, CCP.[1]  (*Id.*) Garrison and Osborne did not name Margiotta himself as a defendant.   During litigation, experts whom Garrison and Osborne retained estimated the victims' past and future lost income as a result of their bodily injuries to be $1,766,455 and $1,216,493, respectively.  (*Id.*)

All the parties ultimately settled the civil litigation.  (*Id.* at 21.)   Garrison received $667,500 in gross settlement payments, while Osborne received $597,500. (*Id.*)  Of those amounts, CCP paid $250,000 to Garrison and $200,000 to Osborne. (Doc. 203-1 at 1.)  However, Garrison incurred a total of $268,750 in attorneys' fees and costs, while Osborne incurred a total of $255,225.40.  (*Id.*)

The Government has provided the Court with a restitution spreadsheet and exhibits breaking down the settlement disbursement.  (*Id.*)  Garrison and Osborne accepted and approved the settlement disbursement statements their counsel provided them, and the supporting documents—which include expert opinions and

---

[1] The remaining four defendants were Saddle Butte Pipeline, LLC; C4 Builders; Bulldog, Inc.; and Woody's Trucking.  As the trial testimony and evidence showed, these entities were involved with either the production or transportation of the natural gas condensate or the CCP facility's construction.

the general release and settlement agreements—were all filed in the related civil case.  (*Id.*)  The Court therefore finds the values they contain sufficiently reliable and will use those values in determining restitution.  What remains is determining which restitution amounts Margiotta must pay under the law.

The Government provided three separate options it feels are reasonable for determining the appropriate restitution amounts: Option 1, estimated lost income minus settlement payments; Option 2, settlement payments minus net settlement proceeds actually received to account for attorneys' fees expended to seek compensation for bodily injury losses; and Option 3, estimated lost income minus settlement proceeds actually received.  (Doc. 200 at 21–24.)  During the sentencing hearing, Margiotta objected to restitution because of a lack of direct and proximate causation, along with the inclusion of attorney's fees as a component of restitution.  Margiotta provided no further argument or evidence regarding restitution.

The Government believes a conservative measure addressing only the victims' lost income to be a fair starting point for restitution.  Garrison and Osborne have neither supplied documentation nor asked for restitution to compensate them for other expenses, such as medical or rehabilitation services.  (Doc. 200 at ¶ 27; doc. 187-1); *see* 18 U.S.C. § 3663(b)(2).  Therefore, the Court will consider only their lost income.

3

The Government concedes in Option 2 that the lost income values from the experts Garrison and Osborne retained ($1,766,455 and $1,216,493, respectively) were provided in the course of civil litigation and resulted in the lower negotiated gross settlement proceeds ($667,500 and $597,500, respectively).  This suggests the negotiated settlement proceeds were reasonable values for the victims' lost income.  The Court finds these values are the most reasonable starting points for restitution.

The Government argues Margiotta should be accountable for the full negotiated settlement amount.  The Government's Option 2 also calls for the Court to order restitution for the amounts Garrison and Osborne expended on attorneys' fees and costs.  The remainder of this Order addresses these arguments.

I.     **Discussion**

   A. *Margiotta is only accountable for the amounts CCP paid the victims for their lost income.*

The Court must first determine whether Margiotta should pay the full negotiated settlement amount in restitution.   18 U.S.C. § 3664 provides the procedure for issuance and enforcement of a restitution order.  Initially, the Court must calculate the "full amount of each victim's losses" that Margiotta caused through his illegal conduct, regardless of his financial resources or economic circumstances, § 3664(f)(1), or the fact that the victims received compensation from insurance "or any other source," § 3664(f)(2).  *See United States v. Ritchie*, 858 F.3d 201, 215–16 (4th Cir. 2017).  After calculating the victims' losses, the Court must

4

determine whether the statute affords Margiotta any credits against the obligation, so as to prevent double recovery by the victims.  Section 3664(j); *United States v. Stanley*, 309 F.3d 611, 613 (9th Cir. 2002).

> 1. *The harm Margiotta proximately caused through his criminal conduct is most closely related to the amount CCP paid in the negotiated settlement.*

"Restitution seeks to compensate the victim for all the direct and proximate losses resulting from the defendant's conduct . . . ."  *United States v. Gossi*, 608 F.3d 574, 581 (9th Cir. 2010) (emphasis omitted).  Restitution is limited to those losses *directly resulting* from the defendant's criminal conduct.  *United States v. Gamma Tech Indus.*, 265 F.3d 917, 927 (9th Cir. 2001); *see also United States v. Koenig*, 952 F.2d 267, 275 (9th Cir. 1991) (holding restitution is permitted "only for losses directly resulting from the defendant's offense" (internal quotations and citations omitted)).

Several entities negotiated and settled with Garrison and Osborne for their lost income, which implies these entities found there was enough evidence that a jury may have held them at least partially responsible.  *See* (Doc. 203-1.)  Margiotta was convicted for knowing endangerment and general duty clause violations under the Clean Air Act.  However, his criminal conduct does not encompass the conduct of every party whose decisions, in one way or another, contributed to the chain of

events that brought about the explosion.[2]   The other entities produced and transported the natural gas condensate and constructed CCP's facility—all actions that may have contributed to the explosion.  Therefore, it would be unreasonable to hold Margiotta accountable for the full negotiated settlement amounts in restitution.

Ordinarily, determining the portion for which Margiotta *is* responsible would require a lengthy restitution hearing.  Thankfully, that is unnecessary. All the entities, including CCP, have essentially apportioned responsibility among themselves through the amounts they each agreed to pay the victims for their lost income—all with the victims' approval.  (*Id.*)  The best approximation for each entity's proportional contribution to the victims' injuries is therefore the settlement amounts.

In that case, it is most reasonable to tie the harm directly and proximately attributable to Margiotta to the amounts for which CCP settled.  Margiotta and CCP are, of course, distinct (which will bear on to whom Margiotta must pay restitution). Nevertheless, ample evidence at trial established Margiotta as the CEO, owner, and operator of CCP.  (Doc. 157, Tr. at 520–22.)  He had the final word on all CCP's

---

[2] Margiotta's actions did nevertheless contribute to the explosion.  The Court overrules Margiotta's objection that there is a lack of proximate cause between Margiotta's criminal conduct and the victims' injuries.  The Court addressed a similar argument before in its order denying Margiotta's motion to set aside the verdict.  (Doc. 179.)  Margiotta decided to begin accepting shipments of natural gas condensate knowing his facility lacked proper ventilation (among several other deficiencies).  (*Id.* at 8–12.)  Though Margiotta's criminal conduct was not the *sole* cause of the explosion, his conduct was a direct and proximate cause.

decisions, and he engaged in the criminal conduct at issue as CCP's CEO. *See* (*id.*). Therefore, the amounts for which CCP and the victims agreed to settle are amounts directly and proximately caused by Margiotta's criminal conduct—$250,000 for Garrison and $200,000 for Osborne.

> 2. *Margiotta must establish the source by which CCP compensated the victims, and he will be ordered to pay restitution to that source.*

"If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation . . . ." Section 3664(j)(1).[3] In other words, "where a third party has assumed the victim's losses by reimbursing the victim, the court must order a defendant to pay restitution directly to that third party." *United States v. Thompson*, 792 F.3d 273, 278 (2d Cir. 2015); *see also United States v. Rizk*, 660 F.3d 1125, 1137 (9th Cir. 2011) (requiring a defendant to pay back his insurer after it compensated his victims for a portion of their losses).

CCP paid Garrison $250,000 and Osborne $200,000. (Doc. 203-1 at 1.) The Court will not order Margiotta to pay the victims those amounts because it would amount to a double recovery. *See Stanley*, 309 F.3d at 613.

---

[3] The statute also states, "but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation." Section 3664(j)(1). That is not at issue here: the victims have already received payments for their losses. (Doc. 203-1 at 1.)

Nevertheless, while Margiotta is responsible for those amounts, the Court lacks information about how they were actually paid. If insurance or another source compensated Garrison and Osborne on CCP's behalf, Margiotta may have to pay restitution to insurance or that other source. If Margiotta paid these amounts himself, he would owe no additional restitution for the amounts CCP paid. Either way, he is in the best position to resolve the matter, *see* § 3664(e), and he must supply documentation and records regarding the payments so the Court may determine to whom he owes restitution (if anyone).

### B. Garrison and Osborne are not entitled to restitution for their civil attorneys' fees and costs.

The Government next argues compensating Garrison and Osborne for the attorneys' fees and costs they incurred while pursuing civil litigation against Margiotta and the other defendants would make them whole under the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663.[4] The Government contends the attorneys' fees and costs were incurred as a prerequisite to obtaining compensation for the bodily injuries Garrison and Osborne suffered. (Doc. 200 at 23.) The

---

[4] Some opinions the Court cites in this Order refer to the Mandatory Victim Restitution Act (MVRA), § 3663A. Between the VWPA and the MVRA, the VWPA states when a Court "may order" restitution while the MVRA states when a court "shall order" it. *Compare* § 3663(a)(1) *with* § 3663A(a)(1). Notwithstanding, subsections (b)(2) and (b)(4) under both statutes (the provisions at issue here) use identical language, and courts interpret and apply those provisions under the same rubric. *See, e.g.*, *United States v. Abdelbary*, 746 F.3d 570, 577–79 (4th Cir. 2014).

attorneys' fees and costs amount to $268,750 for Garrison and $255,225.40 for Osborne.

Section 3663 of the VWPA governs the Court's order here. At issue is § 3663(b), which provides the types of costs for which the Court may order Margiotta to compensate Garrison and Osborne. "[I]n the case of an offense resulting in bodily injury to a victim," as here, in addition to payments for medical and rehabilitation expenses, the Court may order the defendant to "reimburse the victim for income lost by such victim as a result of such offense." Section 3663(b)(2). Furthermore, in any case, the Court may order the defendant to "reimburse the victim for lost income and necessary child care, transportation, and other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." Section 3663(b)(4).

Before 2018, circuit courts were split on whether private investigation costs, including attorneys' fees, were recoverable under subsection (b)(4). *See Lagos v. United States*, 138 S. Ct. 1684, 1687 (2018) (collecting and comparing cases). The Ninth Circuit had adopted "'a *broad* view of the restitution authorization [for investigation costs],'" and allowed recovery of "investigation costs—including attorneys' fees—incurred by private parties as a 'direct and foreseeable result' of the defendant's wrongful conduct." *United States v. Gordon*, 393 F.3d 1044, 1056–57 (9th Cir. 2004) (quoting *United States v. Phillips*, 367 F.3d 846, 863 (9th Cir. 2004)

(emphasis and alterations in original)).  In *Lagos*, however, the Supreme Court narrowed subsection (b)(4)'s application to *government* investigations and criminal proceedings alone, excluding a victim's private investigations and civil proceedings. *Lagos*, 138 S. Ct. at 1690.  Accordingly, an order of restitution including attorneys' fees and costs in this case would have to come under the only other applicable provision—§ 3663(b)(2).

The Government points to a recent Eighth Circuit case to argue the Court may nevertheless order restitution for civil attorneys' fees and costs under § 3663(b)(2): *United States v. Gammell*, 932 F.3d 1175, 1177 (8th Cir. 2019).  There, a defendant conducted a series of malicious network attacks against several entities with whom he had personal grievances.  *Id.* at 1177–78.  He effectively disabled his victims' systems and websites but made considerable efforts to conceal his identity as the perpetrator.  *Id.* at 1178.  After the defendant's conviction, and after a 2-day restitution hearing, the district court ordered him to pay almost $1 million in restitution to 14 victims.  *Id.* at 1179.  The restitution compensated the victims for actions they took to mitigate or remediate the damage from the defendant's attacks, fees and labor costs involved in obtaining mitigation services and moving websites to new web hosts, and payments to employees and third parties for other responsive actions, including investigating and diagnosing the disruptions and mitigating and remediating their effects.  *Id.* at 1181–82.

10

While *Lagos* prevented the district court from ordering restitution under § 3663(b)(4), the court ordered restitution under § 3663(b)(1), and the Eighth Circuit affirmed that decision.

> Here, as the district court noted, it ordered restitution pursuant to a separate subsection of the MVRA, § 3663A(b)(1), which governs restitution regarding damage, loss, or destruction of property. The district court did not make any award specifically tied to expenses incurred in investigating Gammell as the perpetrator or in prosecuting Gammell's crimes. Rather, the so-called investigative costs were 'a prerequisite to repairing or replacing the damaged property[,]' and thus were tied to compensation for property damage. *Lagos* thus has no applicability to a restitution award made pursuant to § 3663A(b)(1), a separate subsection unrelated to costs of investigation.

*Id.* at 1181 (quoting the district court's restitution order).

Using similar reasoning, the Government urges the Court to order restitution for the victims' attorneys' fees and costs under § 3663(b)(2). However, *Gammell* is distinguishable, and several other considerations convince the Court that such restitution is inappropriate here.

*Gammell* only involved costs associated with diagnosing the defendant's disruptions and remedial measures to repair the damage. It made no mention of any civil lawsuit the victims filed or whether litigation costs—especially attorneys' fees—could be categorized as a "perquisite to repairing or replacing the damaged property." *See Lagos*, 932 F.3d at 1181. Certainly, if the victims in *Gammell* chose to pursue civil litigation, the expenses of diagnosing, mitigating, and repairing the defendant's damage would have been recoverable. However, during civil litigation,

the victims would have incurred additional *litigation costs*, which *Gammell* did not clearly address.

Based on the information before the Court, Garrison and Osborne seek litigation costs that are distinguishable from the expenses at issue in *Gammell*. Garrison's and Osborne's litigation costs do not fit under the umbrella of expenses the victims in *Gammell* incurred to diagnose, mitigate, and remediate the defendant's damage, which included identifying the source of their system disruptions. *See Gammell*, 932 at 1181–82. And unlike the litigation expenses at issue here, the expenses in *Gammell* were not incurred in order to pursue a civil judgment against the defendant. Furthermore, Garrison's and Osborne's litigation costs are only tangentially related to the direct and foreseeable damages Margiotta caused through his conduct. Even assuming Garrison and Osborne could recover private investigative and other remedial expenses under a broad reading of § 3663(b)(2), their expenses were not a "direct result of the conduct" for which Margiotta was convicted. *See United States v. DeGeorge*, 380 F.3d 1203, 1221 (9th Cir. 2004).

Moreover, circuit opinions predating *Lagos* indicate that, other than limited exceptions, litigation costs would not have been included even under an expansive reading of § 3663(b):

> Generally, attorney fees incurred in civil litigation against the defendant for the same acts at issue in the criminal proceedings are consequential damages that are not recoverable. *E.g., United States v. Seward*, 272 F.3d 831, 839 (7th Cir. 2001) ("In calculating . . . the actual loss amount

12

for restitution, the district court should include in the calculation all direct damages, but not include consequential or incidental damages [such as attorney fees].").  However, where a victim's attorney fees are incurred in a civil suit, and the defendant's overt acts forming the basis for the offense of conviction involved illegal acts during the civil trial, such as perjury, such fees are directly related to the offense of conviction and therefore are recoverable as restitution under the MVRA.  *See United States v. DeGeorge*, 380 F.3d 1203, 1221–22 (9th Cir. 2004).

*United States v. Elson*, 577 F.3d 713, 728 (6th Cir. 2009) (alterations in original); *see also United States v. Abdelbary*, 746 F.3d 570, 577–79 (4th Cir. 2014).

This is also true for the Ninth Circuit.  In *DeGeorge*, a defendant "participated in a scheme to defraud by purchasing a yacht, inflating its value through a series of sham transactions, obtaining insurance on the yacht at the inflated value, scuttling it off the coast of Italy, and attempting to collect the insurance proceeds."  *DeGeorge*, 380 F.3d at 1207.  As part of the scheme to collect the insurance proceeds, the defendant lied about the cause of the yacht's sinking during civil litigation against the insurance carrier.  *Id.*  The district court ordered the defendant to pay restitution for the attorneys' fees the insurance carrier incurred while defending the civil case.  *Id.* at 1221.

The Ninth Circuit affirmed the restitution order under the VWPA and contrasted *DeGeorge* from an earlier case, *United States v. Barany*, 884 F.2d 1255 (9th Cir. 1989), where it reversed a restitution award that included civil attorneys' fees:

13

Despite the similarity, *Barany* is not controlling. The charges in that case were limited to mail fraud, and the civil trial was merely an eventual consequence of that fraud. By contrast DeGeorge was convicted of conspiracy that included his perjury and other conduct during the civil trial as overt acts. Thus, the insurance company's expenses in the civil trial were *directly*, not tangentially, related to DeGeorge's offenses.

*Id.* (emphasis in original).

Like *Barany*, the civil case here was merely an eventual consequence of Margiotta's conduct. The litigation expenses are only tangentially related to his offenses. Therefore, even if *Gammell*'s and *DeGeorge*'s broad inclusion of certain expenses in restitution applied despite *Lagos*, the litigation costs at issue are distinguishable.

Similarly, this case is distinguishable from other Ninth Circuit cases the Government relies on that predate *Lagos*. (Doc. 200 at 22); *see United States v. Waknine*, 543 F.3d 546, 559 (9th Cir. 2008) (reversing a restitution award for lack of evidence, but also questioning restitution for attorneys' fees where the victims likely hired attorneys solely to protect themselves from prosecution); *United States v. Gordon*, 393 F.3d 1044, 1057 (9th Cir. 2004) (affirming a restitution award under § 3663(b)(4) for investigation costs and attorneys' fees incurred by a victim entity in response to five grand jury subpoenas requiring the victim entity to analyze "vast amounts of documentation and electronic information"); *United States v. Phillips*, 367 F.3d 846, 863 (9th Cir. 2004) (holding the Government is entitled to restitution

14

for certain costs "if they are not routinely incurred prosecuting criminal cases but instead are a direct and foreseeable result of the Government's mitigation" of the defendant's damage) (internal quotations omitted); *United States v. Cummings*, 281 F.3d 1046, 1052 (9th Cir. 2002) (affirming a restitution order for attorneys' fees a mother incurred in an attempt to regain custody of her children because the fees were "a direct and foreseeable result" and "[t]here would have been no need to engage in civil proceedings to recover the children if [their father] had not unlawfully taken them to Germany").

These cases involve attorneys' fees and costs necessary to mitigate damages, *see Phillips*, 367 F.3d at 863, to rectify a defendant's conduct, *Cummings*, 281 F.3d at 1052, or to comply with complex grand jury subpoenas, *Gordon*, 393 F.3d at 1057. And *Waknine* involves restitution for attorneys' fees the Ninth Circuit likely would not have approved even if there was evidence to support them. 543 F.3d at 559.

In short, Garrison's and Osborne's litigation costs are distinguishable from the costs in dispute in these cases. They were not necessary to mitigate damages, rectify Margiotta's conduct, or comply with the Government's investigation, and Margiotta's criminal conduct was completely unrelated to his conduct in the civil case. The Court concludes the litigation costs were not a "direct and foreseeable result" of Margiotta's conduct, even if *Lagos* still permitted the inclusion of certain private investigatory costs and attorneys' fees under § 3663(b)(2).

15

## II.     Conclusion

Margiotta is accountable for $250,000 to Garrison and $200,000 to Osborne for their lost income.  The victims have already received those amounts, so Margiotta need not pay anything in addition to them.  However, Margiotta must provide documentation regarding the CCP payments in order that the Court can determine whether Margiotta owes these amounts to another source under § 3664(j)(1).  Upon receiving the documentation, the Court will issue a second order on restitution and enter an amended judgment for Margiotta that reflects the restitution amount ordered, the balance owed, and to whom the monies must be paid.

The attorneys' fees and costs Garrison and Osborne incurred in their civil litigation are not recoverable because they are only tangentially related to Margiotta's criminal offenses.  Accordingly,

**IT IS HEREBY ORDERED:**

1. The Defendant shall provide documentation and records sufficient to establish the origin of the funds Custom Carbon Processing, Inc. paid to Joshua Garrison and Aaron Osborne on or before August 14, 2020.

2. The Defendant shall not be required to reimburse Joshua Garrison and Aaron Osborne for their civil litigation attorneys' fees and other expenses.

The Clerk of Court shall notify the parties of this order.

16

DATED the 30th day of July, 2020.

SUSAN P. WATTERS
U.S.  DISTRICT JUDGE

17